Uhmheaded. Yeah. Yeah. Mhm. Do we got the audience? Four That one. Be seated please. Uh, next case of the morning is number 22 to 08. Spillers Harris County. We'll hear first from Mr Johnson. Good morning. This civil rights case stems from the decisions and actions of Mr Quincy. When he encountered Mr Spiller, his girlfriend at the scene of a car accident, he was already having a bad day and that he may have been felt slighted by Mr Spillers preference for the other deputies on the scene. So he decided to take that out quietly on Mr Spillers by choking him and slamming him onto the foot of the car with no warning, no attempt to arrest Mr Spillers and no crime being committed. Based on a clearly established case the fourth amendment cannot tolerate these actions, nor can the first. As a result, three main points on appeal. First, a jury could easily find that the force used was both objectively unreasonable and excessive in part because there was no crime, no arrest attempt and no provocation by Mr Spiller and in part due to the sheer speed of escalation among other reasons. Second, a jury could just as easily find that there was arrest for interference because there is no crime when the interference consists of speech only, excuse me. So the arrest for Mr Spillers speech violates both the first and fourth amendments in that case. And third, the county defendants were prematurely dismissed despite a strong retaliation point. The allegations were relevant examples that could belie the existence of both policy and custom and the excessive force. A look at the district court's opinion itself with all due respect to Judge Hughes highlights exactly why this case should not have been dismissed on summary judgment. On ROA 315, the district court says, quote, the altercation escalated. Spillers spoke over Lindsay as Lindsay walked toward her. Lindsay grabbed him by the throat and slammed him down on the hood of the nearest car, unquote. He then follows that up on ROA 317 where he says, quote, it is undisputed that Lindsay put his hand on Spillers throat. A reasonable officer could see that could see that reaction was lawful to respond to an uncooperative witness, unquote, that those propositions were not cited by the district court. Instead, a direct contradiction to this court's case law. We can look at cases such as noon versus 7 3 7 57, both of which are cases where we have plaintiffs that take some sort of action that the officer claims to have construed as a former former resistance or a form of action against the officer immediately respond to force and that force was held to not to be accessible. Not being uh, place on the hood of the car. Yes, between being choked and being slammed under the car and the altercation itself. And then he got taken to the ground because he was punching and kicking everybody in sight. So I said that he sustained injury from being placed on the hood of the car. It's difficult to pinpoint exactly which actions over the course of the entire altercation. However, the force of the choke and the force of the slam on the hood. Um, in addition to the placement of where those pain points have persisted into the future, could could definitely show that those injuries resulted from the force that immediately by the choke and slam. I understand that one can use hyperbole in describing a situation. I did watch all of the body cam, which was some by Lindsay and some by the other officer twice each. And, uh, I didn't perceive that Lindsay's, uh, what Lindsay did to the fellow was particularly severe. Um, you're right. I similarly watched the video multiple times. Absolutely. At multiple speeds and all this, um, the force it takes to grab by the throat slamming onto a car is undoubtedly at least, you know, a medium degree of forcing in terms of the police sense where you've got the highest levels of force, legal force, the lowest levels of force, open hand control, or, you know, non non force events such as verbal commands and alike. Um, so this is somewhere in the middle of all that, certainly. Um, and the problem is, uh, well, there's a number of problems. First of all, the speed of the escalation between Joseph versus Bartlett Westport's case and the grand factors, we can look at a number of things. Again, the speed of the escalation, we can look at the severity of the crime. The only crime that could arguably have precipitated the use of force in this case was the the only thing that happened between Mr. Spiller and Mr. Lindsay before the use of force where they were talking to each other. Of course, the voices were raised. Tensions escalated, largely in part due to Mr. Lindsay. But you do concede, um, that Spiller's elbow made contact with Officer Lindsay's abdomen. There's no dispute about that, right? This was before being grabbed by the car. There was this, now you call it unintentional, correct? Inadvertent, unintentional. That's right. Um, but does that intent matter as Spiller's intent matter? I mean, could it could a reasonable officer use the elbow making contact with his abdomen as impact of aggression? Uh, Your Honor, I believe that the intent and specifically the way that the video plays out in this you know, where you see these two kind of closing on each other. I mean, Mr. Spiller is largely stationary. Mr. Lindsay comes toward him and then kind of tries to edge around. Uh, it's a lot like, again, the case, the Goodson and the Newman cases. In both of those cases, one of them, the plaintiff jerked their arm from the handcuffs as the officers were attempting to arrest her. And the other one, the plaintiff backed into the opposite. This is exactly that same level of, this is contact that happens when people are close together. Um, so whether or not, whether or not Mr. Lindsay perceived some sort of aggression, this court has stated that that level of contact is not entitled to the qualified immunity defense when it comes to immediately escalating the force as a result of that contact alone. Uh, and in addition to the fact that the interference or speech only was the only argument of crime that Mr. Spiller could have been arrested for, we also believe the fact that he posed no perceivable safety threat to Mr. Lindsay or anybody else on the scene. There were three officers, um, that he exhibited a condominer until Mr. Lindsay walked up. Um, and in addition, uh, we can look at the relationship between the need for force and the amount of use. Again, there's nothing that happened leading up to the use of force that indicated to Mr. Spiller that he was about to be placed under arrest. There was nothing that indicated that he needed to do something different than what he was doing in terms of he was, he was just trying to ask a question. All he was trying to do was get a question and then proceed with whatever the officer needed him to do. Um, so none of that under the excessive force factors should justify any use of force at all. Well, if you can't point to specific injury, not even a bruise, uh, should the Fourth Amendment deal in trivial trivialities? The Fourth Amendment, the limitation on the Fourth Amendment is, of course, uh, there is no recognition of the minimus injuries. Um, however, in this case, we do have minimus. In terms of sussing them out between which specific instances of force over the course of a dynamic encounter, that is a question that should square the corner on fact-finding to determine, okay, what are the long-term injuries? What's compensable? What, at what point does the force turn from excessive and unreasonable to justified and reasonable? Because at a certain point, of course, we didn't sue the other officer for using a taser because at that point, the claimant, uh, so determining what that point is, what injuries occurred before and which are compensable are the exact kind of questions that should be left for a fact-finder, making this case inappropriate for a subject judge. Turning them to probable cause for interference, again, Texas Penal Code Section 38.15 subsection D says that there is no crime for interference or speech only. And this court and the Texas state courts have read that statute in the exact same way. Now, with respect to a subsequent probable cause finding, the only reference in the record to that subsequent probable cause finding was a reference to Harris County Public Records, but there was no actual documentation included, no support of that documentation attached, uh, attached, excuse me, um, and no consideration for the exceptions to those subsequent probable cause findings, including that, uh, under Malley v. Briggs, probable cause determined by any intermediary, uh, without any support included for a crime that does not exist as interference for speech only, um, does not satisfy the probable cause amendment to justify an arrest, or alternatively, if there was a material misrepresentation. Uh, now, as to the argument that he, uh, Mr. Spoda could have been arrested for DWI, um, this court's doctrine of, the related defense doctrine, excuse me, squarely prohibits exactly that kind of post hoc justification. Uh, why an arrest was made. These, the offense for DWI was not related to the claimed interference with police duties that Mr. Lindsey was, was claiming that Mr. Spoda should be arrested, um, because that level of intoxication, first of all, is not part of the equation when it comes to the interference, but also because we can look at things like the fact that Mr. Lindsey asked Mr. Spoda to get in his car and follow them to a secondary location. Uh, it, it doesn't make sense that it, it doesn't support that an officer that sincerely believes somebody should be arrested for DWI to then get back in their car and keep driving. Uh, so with, without any basis for probable cause, whether for interference or for DWI, the arrest itself can't be supported under the Fourth Amendment and because it was in response to Mr. Spoda's speech to Mr. Lindsey and to the other deputies, uh, neither the Fourth nor the First Amendment can, or both the Fourth Amendment and the First Amendment are violated by that action. And turning finally to the municipal defendants, that being Harris County and Constable Walker, um, the case was prematurely dismissed because the appellant has a strong ratification. It was reviewed all the way to the constable herself. There was all the, the body cam videos that we have all seen, that we have all reviewed. Um, and when it comes to ratification, first of all, reviewed by a policymaker is a key part of this. So we have policymakers that reviewed, reviewed the videos and determined that Officer Lindsey's actions were okay. This comports with our policy as a county. And this court, of course, there's, there's the grand standard of sufficiently extreme conduct. Um, and there was also a follow up to that, the Worldwide Creatures versus the County of Columbia case. Uh, 541F3747, that was this court in 2009. Um, which appellant reads to state that, uh, something that is configuredly established by case law to be over a constitutional line can't, can't count as sufficiently extreme conduct. In addition to that, we see on the record pages 101 and 102, uh, that's whether the constable is a policymaker. We've pledged that this specific officer, Mr. Lindsey, has a history of excessive force. We've pleaded at least two similar excessive force instances and that there are other issues, or that there are other cases where, uh, claimants were discouraged from filing complaints against the county. Uh, in addition to that, we see Constable Walker's actions, uh, in terms of hiring, in terms of discipline, that led to Mr. Lindsey being placed in exactly this position with the belief that he could use force in this way and was then subsequently justified in using force in this way when he was not disciplined by the county. So for these reasons, we ask this court to reverse and remand both district court's orders against all of the applicants. Thank you. All right. We have an opportunity for rebuttal. We'll hear first from Mr. Hull. Morning. Pleased to be here. My name is Michael Hull. I represent Deputy Jerry Lindsey and Lindsey on the English case. Um, I kind of thought this was a relatively routine case when I first got it. Um, I do believe there was a probable cause. Um, you know, as far as the interference with, uh, public duties, um, there's plenty of cases at that point that are very similar. Take, for example, out of the Fifth Circuit, Pagany versus TSU. I talk about it in a brief, but that was a case where a teacher is and the officer tells him to move away. And he does it first, and then the officer takes the suspect into a building, and the teacher comes back. And he gets within about 10 to 15 feet, and he starts talking loudly or yelling at the officer to leave and carry on. He gets arrested. But the thing was is that the more important parts of that is an officer could be wrong about probable cause and still have  Um, we don't have to determine whether it was, you know, what the state court would have done to have that charge on him with, uh, 38-415. You know, it's just a fair probability. It was a fair probability. That's what we talk about in, uh, Pagany versus TSU. And then we have another similar case. This came out of the U.S. Supreme Court a few years ago. And I can't pronounce the name. The 9th. Meadows versus Bartlett. Again, a similar case. Uh, a police officer was talking to some kid. Underage drinkers, presumably. And somebody was yelling at him, don't talk to the cops. Don't talk to the cops. Um, the police officer starts to approach this guy. He runs away. Um, a little bit later, um, same thing's happening to another police officer. And instead, the guy now inserts himself between the police officer and the kids. And he's yelling at the police officer, leave the kids alone. And, uh, then gets up in the police officer's face and never touches him. But the police officer pushes him back. The other police officer here, under test of the law, what was the crime exactly? At the moment, Officer Lindsey grabs this killer by the neck. Slams him under the car. What was the crime? The most obvious one there, I think, was assault. Um, because of the elbow? Yeah, he hit him. Um. He hit him?  Um. Is there a difference between not abusing somebody and having their head cut off? I don't know if I'm in contact with somebody. But you can see him move his arm around like this in the video. So I don't want to split those hairs because he did it intentionally. He did this. And you can hear the thwack. On one video, you can hear the thwack. Um. On Wayne's video, you can actually see it. And then on Lindsey's video, you can hear it. So, you know, looking at them both together, I mean, he did it. That's an assault. Assault under Texas law is intentionally or knowingly causing physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. And that's exactly what it was. And bear in mind, before this point, there's already a notice that he's going to be difficult. He's been told several times to quit answering for the girlfriend. Three times he's told. And the thing is, he can go with the girlfriend. He's told three times. She's going with Officer Lane, Deputy Lane. You can follow us. That's not a problem. We want to get off the highway. Nobody wanted to get hit. And that's what all this is about. And that wasn't good enough for him. And he decides he wants to talk to somebody else. That's just not the way it works. This is a crime scene investigation. Um. It's not a place for debate. So, I believe he was interfering. It's very similar to the DM's case. Mr. Bartlett. And, um. There is a defection under 8.15 that says words only. It doesn't say words. It says words only. Um. In these cases, I cited three of them. There was no contact. There was no threats. It was just a kind of interference with the duties. I mean, when you actually are stopping the officer from doing what he's supposed to do. And, uh, as the court said, I believe it was 9 a.m. You know, there's a time and place for this, and that's not it. When the officer was trying to arrest somebody or get that carry stop or whatever it was he was doing at the time. Um. There seems to be I'm back to the elbow again um, a dispute over whether Stuller elbowed Lindsey, as you contend. Or whether he maneuvered around him with his elbow. I think I think, Your Honor, they were both moving towards each other. And I think when they got too close, Stuller just gives him the elbow. I don't know. He wasn't moving north or south. They were moving east-west  I don't know. And the more important thing, Your Honor, is it's what a reasonable officer will perceive. And in the video you also see other officers walk up to Lindsey and say, I saw it, he hit me. You see the tow truck driver walk up and say, I saw it, he hit me. Um, so that's what he perceived, and he may have been wrong. But that's, you know, he can still have the qualified opinion if he's wrong. It was reasonable. And again, you have about a minute where it's ratcheting up where he's giving directions, he's telling them to do something. And they're very simple directions. He didn't stay with his girlfriend, and he's not happy about that. And again, you find out afterwards, which doesn't affect your analysis, but they've both been drinking. And I'm sure he just wanted to get out of there. And Lindsey, right from the start could smell it. He asked, Lane, do you smell it? I smell it everywhere. Booze. So there were suspicions. Now, you know, he primarily thought his girlfriend was drunk. He didn't know about spilling. His girlfriend just drove her car into the wall. One car accident. But, you know, and the thing about agony is they talk about, as people kind of close in, the officer has to do something. It's kind of that situation. And as they get closer and closer, he's got to do something. Nothing in the Constitution requires an officer to take a hit or wait till somebody So once he touched her, a provocative touch, he consulted her. At least it's a fair reading. A reasonable officer would believe there's a proper cause for that, that he committed a crime when he was trying to commit a crime. I'm just trying to square the reasonable officer standard that you articulate with the summary judgment standard of genuine factual disputes. Surviving the summary judgment. Well, you give a pretty good explanation in the Joseph case, Your Honor. You know, it flips the burden when there's qualified immunity, it flips the burden. I mean, it's up to them to show there's a case. Well, it's up to them in the first instance to show that it was a violation, and in the second instance to show that it's objectively unreasonable, you know, to go back in time and to look at what was available and what the officer should have known. You don't usually have a third party on the scene saying to the officer he hit you. There's a factor issue maybe when you don't have a third party witness, but... We have four or five witnesses that saw that. So, between the two of them, there's a proper cause. Even if he's mistaken, it's reasonable. I'm not sure there's much more to say unless one of the judges has questions because video's the video. You're right, Your Honor. It's about 20 seconds. The whole thing boils down to about 20 seconds. Actually, about a minute where the question starts. But that's it. So we'd ask the court to affirm the dismissal. Thank you, Your Honor. Alright, thank you. Ms. Bradley. Good morning. My name is Suzanne Bradley and I represent Harris County and Constable May Walker in this case. And as a threshold matter, dovetailing off what my co-counsel just said, if this court finds that Officer Lindsey has qualified immunity, Harris County and Constable Walker are out. So, that's easy. But this case comes to the court with a motion to dismiss for Harris County and Constable May Walker. And while the standard is de novo, and that we must accept all of Mr. Spiller's allegations as true, as a matter of law, Mr. Spiller fails to show what I understand counsel to focus on as the policy and custom of the precinct. First of all, I have two issues for this court. One is ratification and the second is whether or not a plaintiff's complaint or an appellant's complaint can survive on the now at the motion to dismiss stage. First of all, on ratification, there is no clear cause of action as to ratification for Constable Walker on her individual basis. Now for me this was a little muddy and so I sent the case to the court recently, the Hobart case at 916 Fed Sub 799. Now this is not a precedential case for this court, but it is very instructive. And there the district court goes through the analysis and talks about how ratification is really as to a municipality not as to an individual. And I would like to take this a little bit further, Your Honor. I think what this appellant wants this court to do is take ratification and turn it to Responding Out Superior Law for Harris County and for Constable May Walker. And you just can't do that. The Supreme Court case law is clear that you cannot tag a county, tag a municipality on the basis of Responding Out Superior Law. Further, the case law in this court is clear that the supervision official supervision an official can only be held officially liable if he participates in the acts that cause the constitutional injury or if she implements unconstitutional policies. Now there is no evidence at the motion to dismiss stage, we didn't get to that point but there is no evidence on the video that Constable May Walker was out there that night participating in the acts that Mr. Spiller alleges. And I will take it further Plaintiff's Petition which is a First Amendment petition and it begins at the record site is 95 3-1-10 Plaintiff's Petition is very thin on what unconstitutional policies Constable Walker allegedly implemented. Here the appellant says that the Constable Walker knew Sgt. Lindsey was fired from her prior job for excessive force that there was a complaint of racism against him and that she watched the video and did not discipline Sgt. Lindsey Well first of all Harris County and the precinct don't have a policy of excessive force and there is no responding as superior and the two cases that Plaintiff cites as examples under Manel at record 102 was an August 2019 case where a constable nobly broke an arm of a female and then falsely charged her with interference of public duties and then the next example is a May 4, 2020 Precinct 7 deputy who tasered a shackle and handcuffed an African American suspect and despite the review of the incident by the precinct this person was not disciplined and Plaintiff's alleged that he was promoted. Well this simply is not ratification Ratification of the landmark case there of course is Grandstaff and the facts of Grandstaff of course are extraordinary an individual was driving down the road in a car too slow Japanese and the sheriff of that small county were speaking after someone supposedly was causing a traffic issue and they found this random guy on the road and they filled his car and they fired the bullets in that particular case this court said okay we're going to go ahead and allow you to get to the county but the Frayer case talks about from this court which is at 957 S 2nd at 1278 that the refusing to punish the deputy is not ratification and frankly the cases or the facts that I've heard in this court as they have alleged are just not the extreme type of facts that we see in Grandstaff I would also refer the case the court to Peterson at 588 3rd, 848 and then finally the couldn't be led better case has foreclosed that even if this behavior was found to be illegal later it cannot be assumed that it resulted in official policy and the Peterson case also emphasizes this so the facts that appellant wants this court to rely on in terms of Constable Walker just don't get to the extreme nature of Grandstaff and you can't assume just because she looked at the video that she ratified the conduct even if somebody later found out and decided that this was illegal it doesn't the fiscal court can't assume that it was because of official policy now it's also important to note here that Harris County did not train or supervise Sergeant  employee, he's hired by the precinct and trained by the precinct and this dovetails into my argument since when is that legally meaningful? I've heard constables being divorced for liability purposes from Harris County Your Honor I would refer you to the Coates case which is a state case and I'd also refer you to all the cases inside of my brief that talk about how a precinct constable is not a policy maker for a county, that's log time off from the 5th circuit Well I know he's elected separately but if they're but the Lindsey was an officer wasn't he an officer of the constable's office? Lindsey's  The constable's office is non-suited jurist, Your Honor Well, so you can't sue the DA right? Not the district attorney, Your Honor, no in this case it would be the county but this court has long known that constables are not policy makers for the county and if you don't have a policy maker that's the first prong of Manel and you're out but even if this court wanted to decide that Constable Walker was a policy maker they have not shown a policy and they have not shown that that policy is a driving force for Mr. Spiller's injury and just so I can back up a little bit I wanted to point out that one of the things that Penelope argues is that they should have been allowed some discovery well under this court's Carswell case and under both Ashcroft and Twombly the Supreme Court says that when qualified immunity is asserted discovery can be stayed and stopped and when they just cite two examples in their first amendment petition and one of them is post-event they've really only cited one and one of them is a tasing incident and Mr. Lindsey didn't tase Mr. Spiller Okay, well I think we have your argument You're down to zero time It goes by fast Your Honor, I would just urge the court to affirm the dismissal of Harris County and Constable Walker Thank you Okay, Mr. Justice That's all good May it please the court Thank you, Your Honor I will get through as many points as I can as I can get through I will go in reverse order so I'll start with three or four points against the county First is that my colleague on the other side said that if Mr. Lindsey is dismissed because of qualified immunity that would get rid of the case against the county I just want to omit that just a little bit because qualified immunity of course is a two-step process where you first look at whether or not there was a violation and then whether or not the violation was clearly established If there was a violation the county does not have the same protection about the clear establishment If we can show that there was a violation that's attributable to county policy or was otherwise ratified That clear establishment does not excuse the county in the same way that it excuses the officer So that's my first point My second about ratification Just to clarify The ratification claim is just against the county We do allege that Constable Walker did view the video and that's necessary to the claim against the county but it was not a distinct claim against Constable Walker individually So just to clarify We also said and discussed it very extensively in a brief So our question to the extent that they diverge from what you heard here we'll leave for the briefing As for the point about about our devolving into responding as superior With all due respect, that's simply not true What we're saying is that ratification requires some level of escalation reviewed by a policymaker and in this case we're saying that that policymaker with respect to discipline, that is Constable Walker She reviewed the video had a chance to do something about it and chose not to That is far removed from simple responding as superior In my mind both Well what do you say for their argument that the constable is not a policymaker With all due respect I do disagree with that quite fairly vehemently We briefed this on page 21 of our principal brief There's a note, footnote 88 several cases where precinct constables have been found to be policymakers and we elect specifically that she is the policymaker with respect to some of the issues that we're looking at here Higher and higher discipline training of the deafens in her precinct And just to finish up the ratification real quick The problem that I was trying to avoid is the we investigated ourselves and found we did nothing wrong We want to disincentivize municipal entities from being able to do that And I'll just note before moving on to the case against Officer Lindsey that there was kind of a paradox about well these policies aren't attributable to the county but the precinct isn't suitable. We specifically did not name the precinct in our lawsuit for that exact reason. We know that we can't bring an action against them so there is a point which it's a county entity that has to be attributable to the county at some point And to the extent that we can show that Constable Walker is the policy maker that's where we can get Harris County in the case With respect to Hill again a number of things that I know I only have so much time left so I'll just speak for as much as I can and stop when the red light comes on But first with respect to assault he was again he was not arrested for assault he was arrested for interference So to the extent that we can look back after the fact now with all these videos and everything else and say oh well Well he's lit as lit okay so the fact that they didn't charge him with assault is really I mean factually it makes no sense but they can always decide one incident may embody more than one violating That is of course true Your Honor however that can only happen before the initial takedown the lit was not split until after the initial takedown I mean that whole encounter maybe at 5 seconds it's really fast once it starts Right but the point being the assault did not occur Yeah but the unwanted touching as Judge Wood pointed out is an assault technically In certain instances it could be if I may answer your question and briefly conclude but in this case again I think there's a factual argument I kind of could just as well see my side of things that he was just trying to get around and talk to the other deputy because they were catty cornered to each other and to the extent that there's people saying you know they saw Officer Lindsey being hit to my knowledge from my understanding of the way those conversations went that was in reference to after the takedown happened I did not understand that to be in reference to the alcohol incident Mr. Hull says that Officer Lindsey is entitled to be wrong that if he perceived it or misperceived it at the time as an intentional or aggressive act he's entitled to be mistaken about that What do you say? Again with all due respect I think that that's flat wrong for a couple of reasons The first is the cases I've kind of kept coming back to in the oral argument Newman and Goodson in both of those cases the officers interpreted the plaintiff's actions differently than the review outcome I found them to be so that there's a certain level of parallel that we can use for qualified immunity and also to show that that just an officer perceiving any slight for any reason can be used to justify force I just don't think it's the case and secondly with respect to that there is further probable cause case law from the Supreme Court that you know it was a brief in depth with respect to that point so more briefings are required but there is case law from the Supreme Court with respect to probable cause determinations can't necessarily be a lower standard on the street than they are before magistrate and vice versa just because there's a certain point at which a line has to be drawn on the various probable causes Do you have any expert testimony? No because the discovery was not concluded by the time the motions were filed we would have expert testimony in the event that we were allowed to continue the discovery. Did you move to keep discovery open? We believed at the time when we responded that there was enough evidence, there was a lack of evidence on their side to admit that we're in enough evidence for the video to make our case Ok Thank you We have your argument We will be in recess until 9 o'clock tomorrow morning All rise Thank you